THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN SEAMAN, Defendant-Appellant.

Fourth District   No. 14357

Opinion filed October 21, 1977.

Michael L. Pritzker, R. Brent Daniel, and David M. Schneider, all of Pritzker & Glass, Ltd., of Chicago, for appellant.

Ronald Dozier, State's Attorney, of Bloomington (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

■■ After trial by jury in the Circuit Court of McLean County, defendant John Edward Seaman was convicted of the offense of armed robbery and sentenced to 5 to 15 years' imprisonment. Upon appeal and represented by new counsel, his sole contention is that he was deprived of his constitutional right to effective assistance of trial counsel. He recognizes that a long line of cases including *People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425, and our recent decision in *People v. Elliott* (1977), 46 Ill. App. 3d 887, 890, 361 N.E.2d 852, 855, place upon him the heavy burden of showing that his representation was of such a low caliber as to reduce the trial to a "farce and mockery." He maintains that he has met that burden in this case because he has shown that for practical purposes his trial counsel withdrew from the case and gave him no representation at all.

The privately retained trial counsel whose conduct defendant now questions, succeeded a public defender soon after defendant was charged. That counsel then sought and obtained discovery from the State. He also filed an answer to the State's request for discovery stating that the defendant intended to interject the insanity defense and attached to the answer statements of two psychologists and a psychiatrist. All described the defendant as having personality problems. The psychiatrist stated that in his opinion, because of mental disease, defendant, at the time of the robbery, lacked the power to conform his conduct to the requirements of law. None of the statements indicated any lack of ability on defendant's part to understand the charges against him or to cooperate with counsel. On the other hand, defendant was pictured as an intelligent person.

Prior to trial, counsel made, but later withdrew, motions to suppress evidence seized or admissions made. On the date set for trial he moved for a continuance because of an article appearing the previous day in a widely circulated local newspaper stating that after a recent acquittal by a

jury in the same court, a prosecutor stated that they were "disappointed" and "perplexed" with the verdict. Counsel stated that he had been defense counsel in that case and contended that the entire panel of jurors had been tainted by the article. Despite counsel's vigorous argument, the motion was denied. That ruling is not cited as error on this appeal. A jury was subsequently selected after extensive *voir dire* and the exhaustion of available peremptory challenges by both sides. Counsel then unsuccessfully moved for a mistrial on the grounds that defendant had been deprived of a fair and impartial jury.

Defendant's complaint concerns the conduct of his case after the jury was selected. Counsel objected when the prosecutor attempted during opening statement to state what he expected the defense to be. The prosecutor then abandoned that tack. Counsel waived opening statement saying that he was doing so for the reasons stated in his pretrial motions. He then unsuccessfully moved for a mistrial upon the basis of the prosecutor's opening statement. The motion was denied. He made no objections during the examination of the prosecution witnesses and did not cross-examine them. A few questions were leading but the defendant did not appear to be prejudiced thereby. The substance of the testimony was such that a sophisticated trial lawyer who could not dispute the evidence would have been unlikely to make objections and would have cross-examined only briefly, if at all. Counsel did object unsuccessfully to the introduction of the State's exhibits arguing only the same grounds set forth in his previous motion for a mistrial. At the close of the State's case, he moved for a directed verdict arguing again the grounds for which he requested a mistrial and also the State's failure to connect with the defendant, a gun introduced into evidence. The record gives no indication of any grounds for a directed verdict. The court denied the motion.

The most serious aspect of the conduct of the defense concerns counsel's decision not to put on any evidence. Out of the presence of the jury but apparently in the presence of the defendant, counsel stated,

> "Well I want to indicate to the Court that after conferring with my client, because of the position taken on the jury selection, we are going to rest the Defendant's case. We are not presenting a defense because we think that we are—we are indicating again that we think we cannot get a fair trial with this jury in light of the position we have taken. My client is not willing to bring his expert from Chicago where he will have to pay him substantial sums of money to come down here and testify in connection with the insanity defense because of the belief that he has and I concur in that we cannot receive a fair trial."

Defendant's renewed motion for directed verdict at the close of all of

the evidence was denied. He neither offered jury instructions nor objected to those offered by the State. The instructions given, however, properly and fully instructed the jury as to the case. Defense counsel waived closing argument. He did file a written post-trial motion which included all of the points he had raised before and during the trial. At sentencing, he produced substantial mitigating evidence including the statements attached to defendant's discovery answer. He vigorously argued that defendant should receive the minimum possible sentence. When defendant was offered his right of allocution, he spoke implying that he was guilty and expressing remorse and shame. He apologized to the victims of the crime and to his friends whom, he said, would see him in a different light than they had known him before. He asked the court to consider his attitude in imposing sentence. The trial court said that he was imposing sentence of 5 to 15 years rather than a sentence of 4 to 12 years because of the statements presented indicating that defendant was compulsively dangerous. After sentencing, defendant filed a pro se motion to reduce the sentence which was subsequently denied.

Defendant cites the case of *People v. Coss* (1977), 45 Ill. App. 3d 539, 359 N.E.2d 1172, as dispositive of this appeal. In *Coss*, the defendant claimed he was denied effective assistance of counsel in proceedings to revoke probation. At the hearing on the petition to revoke, defendant's counsel moved to dismiss the petition contending that defendant's guilt of the subsequent offense could only be shown by proof beyond a reasonable doubt; that the defendant would be denied due process by having to reveal his defense to the armed robbery charge at the revocation hearing; and that the State's discretion to determine whether to proceed by probation revocation hearing or criminal trial was a violation of due process and subjected the defendant to double jeopardy. The court denied the motion to dismiss, and at the evidentiary hearing on the petition to revoke probation, defense counsel stated he would not participate in the proceedings based on his view that he would be waiving a claim of error in the denial of his motion to dismiss.

The *Coss* trial court advised defendant's counsel that his participation would not waive his motion to dismiss the constitutional questions which were clearly preserved for review upon appeal. Defendant's counsel however persisted in refusing to participate in the proceedings and did not cross-examine any of the State's witnesses or present any evidence. The court concluded that counsel's only strategy consideration was based upon ignorance of a fundamental rule of law and that there could be no advantage to the defendant in the procedure that was chosen. The court concluded that the counsel's conduct which caused him, in effect, to completely withdraw from the case amounted to incompetence of counsel requiring a reversal.

Although counsel in the instant case seemed somewhat obsessed with the court's ruling upon his motion for a continuance, there is no showing that he made any decision upon a misconception of the law. Had the State made a mistake in the presentation of its strong case, counsel's waiver of opening statement, thus concealing his defense strategy, might have given him more flexibility to take advantage of that mistake. Only when counsel elected to put on no defense evidence is there substantial question as to his judgment. It is quite apparent that defendant's only possible defense was insanity. For practical purposes that would require the testimony of experts.

The record indicates that it was the defendant and not counsel who originated the idea that it was not worth the expense to call an expert. In concurring in the defendant's judgment, counsel could have had many reasons. Defendant was shown in the evidence produced in mitigation to be an intelligent person with some college training. The successful use of the insanity defense in non-homicide cases is very rare when the defendant's insanity is not obvious. Considering the bleak posture of defendant's case, counsel could have concluded that defendant's chances were just as good by adopting the unusual tactics used hoping that they would confuse the jury.

■■ In any event, we do not conclude that counsel's tactics reduced the defense to a farce. Unlike *Coss*, no mistake of law is shown to have governed those tactics. Also unlike *Coss*, counsel participated substantially in the proceedings. In many of the instances when he did not do so, action on his part appears to have been useless or even possibly counterproductive. The major decision was made at defendant's request and would save defendant a probable useless expenditure of funds. We do not find that counsel abandoned defendant and we do not deem defendant to have been deprived of his constitutional right to counsel.

We affirm.

Affirmed.

REARDON and WEBBER, JJ., concur.